ROBERT S. BREWER, JR.
United States Attorney
MELANIE K. PIERSON
Assistant U.S. Attorney
California Bar No. 112520
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0450
Email:  Melanie.Pierson@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>MAURO HERRERA,<br><br>        Defendant. | Case No. 20cr3170-GPC<br><br>**GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY**<br><br>DATE: December 17, 2020<br>TIME:  9:00 a.m. |

COMES NOW the plaintiff, United States of America, by and through its counsel, United States Attorney Robert S. Brewer, Jr., and Assistant U.S. Attorney Melanie K. Pierson, and hereby files its Response and Opposition to Defendant's Motion to Compel Discovery.  Said response is based on the files and records of the case.

DATED: November 18, 2020      Respectfully submitted,

                                        ROBERT S. BREWER, JR.
                                      United States Attorney

                                      /s/Melanie K. Pierson
                                      Assistant United States Attorney

I.
STATEMENT OF THE CASE

On September 23, 2020, a complaint was filed in the Southern District of California, charging the defendant with Smuggling, in violation of Title 18, United States Code, Section 545. The defendant failed to appear on September 24, 2020, pursuant to the Notice to Appear, as he had been arrested at the Border Patrol checkpoint. The arrest at the checkpoint resulted in the filing of charges against him in Criminal Case No. 20-cr-3226. The defendant was arraigned on this case September 29, 2020, and entered a not guilty plea.

On October 15, 2020, the defendant waived indictment and was arraigned on an Information with the same charge, and again pled not guilty. A hearing on all motions was set for November 19, 2020.

On November 17, 2020, the defendant filed a motion to compel discovery. The United States responds to that motion herein.

II.

STATEMENT OF FACTS

At about 4:55 p.m. on September 17, 2020, Mauro HERRERA entered the United States at the San Ysidro Port of Entry as the driver and sole occupant of a white Nissan Versa, bearing Oregon license plates. Customs and Border Protection Officer (CBPO) F.Vea contacted HERRERA and asked him twice what he had to declare from Mexico. HERRERA twice stated he had nothing to declare. CBPO Vea observed white bottles of pesticides in the quarter panels of the vehicle and referred the vehicle to the secondary inspection area. In the Secondary inspection area inspectors

located five bottles of "CIPER QL" and one bottle of "Qufuran" in the quarter panels of the vehicle.

After being advised of his Constitutional rights and waiving his rights in writing, HERRERA stated that he bought the pesticides in Tijuana, Mexico, to use on his marijuana grow located in the vicinity of Riverside, California. HERRERA stated that he put the bottles of pesticide in the quarter panels of the vehicle and did not declare them because he was not sure if they were legal.

According to the labels, "Ciper QL" contains the active ingredient cypermethrin. In the United States cypermethrin is a pesticide, but is not a restricted use pesticide in this form. However, although its use is not restricted, as discussed below it must still be registered with the EPA.

According to the label, "Qufuran" contains the active ingredient carbofuran. In the United States, carbofuran is a cancelled pesticide because it is lethal if inhaled or swallowed, harmful if absorbed through the skin, highly toxic to honey bees, highly toxic to birds, highly toxic to mammals, very highly toxic to freshwater and estuarine/marine fish and invertebrates, can leach into groundwater and enter surface water as runoff, and poses a risk to drinking water.

Federal law also prohibits the distribution and sale of canceled or unregistered pesticides. 7 U.S.C. §136j(a)(1)(A). Only pesticides registered with the EPA may be imported or sold in the United States. 7 U.S.C. §136o(c). All pesticides intended for use in the United States must bear their EPA registration number on their labels, preceded by the

phrase "EPA Registration No." or "EPA Reg. No." 40 C.F.R. §156.10(e). In addition, all required information on a label must appear in the English language. 40 C.F.R. §156.10(a)(3). The containers of pesticides found with HERRERA were labeled only in Spanish and bore no EPA registration numbers.

The lawful importation of pesticides into the United States requires a Notice of Arrival to be provided to U.S. Customs, pursuant to 19 C.F.R. §12.112. HERRERA provided no such Notice of Arrival for the pesticides in this case.

## III

## POINTS AND AUTHORITIES

A. <u>THE GOVERNMENT HAS AND WILL COMPLY WITH RULE 16 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE. ANY ADDITIONAL DISCOVERY DEMANDS OF THE DEFENDANT SHOULD BE DENIED.</u>

1. <u>Status of Discovery</u>

The government has made available approximately 102 pages of discovery. The discovery included the CBP reports of the primary and secondary officers, copies of the documents seized from the defendant, the notes of the interviewing agents, the signed advisement of rights forms, the seizure forms, the photographs taken at the Port of Entry, the vehicle registration, a summary of his criminal history, the referral slip, and the reports of the HSI case agent. The recorded interview of the defendant at the Port of Entry will be provided this week.

A warrant was obtained to search his phone. When the results of the search are available (which could be weeks or months, depending on how long it takes to unlock the phone), they will be disclosed. The

videos from the primary and secondary inspections at the Port of Entry have been requested and will be disclosed as soon as they are received.

To the extent that any evidence of prior similar acts exists, it may be found in the statements of the defendant and in the data downloaded from the phone.

This is a reactive case originating from the seizure at the Port of Entry. Accordingly, there are no records of prior investigation of the defendant for this offense. The government has not conducted any scientific testing in this case (nor is any anticipated) and does not anticipate the need for expert testimony. The government will make the appropriate inquiries regarding potential impeachment of its witnesses and disclose all *Giglio* and *Henthorn* materials one week before trial.

The government, to date, has provided discovery consisting of approximately 102 pages of documents. The Government will continue to comply with the rules concerning discovery, as discussed below.

   2. <u>The Government Has Already Disclosed Information Subject to Disclosure under Rule 16(a)(1)(A)and (B) of the Federal Rules of Criminal Procedure.</u>

The Government has already disclosed a written summary of the statements of the defendant, as well as the substance of any relevant oral statements he made in response to questions by Government agents, and will provide the recordings of the interview at the Port of Entry by the end of the week.

The defendant is not entitled to summaries of oral statements of the defendant made to persons not known by her to be government agents, and the memorialization of any such statements in a written report does

not make them discoverable as "written" statements of the defendants. United States v. Hoffman, 794 F.2d 1429, 1432, n.4 (9th Cir.1986).

The videos relating to the defendant's detention at the Port of Entry will be produced as soon as they are received. He was not arrested but was given a Notice to Appear. The notes of the interviewing agents have been produced.

3.   The Government Will Comply with Rule 16(a)(1)(D).

The Government has provided the criminal history report for the defendant. Once the witnesses the government intends to call in its case in chief are identified, records of any evidence of prior convictions for those individuals will be disclosed.

The Government is well aware of and will fully perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment, as well as its duty under Giglio v. United States, 405 U.S. 150 (1972) to provide information on any benefits provided to Government witnesses in exchange for their testimony and impeachment material. The Government agrees to provide this information at least one week prior to trial, after all of the trial witnesses have been identified.

4.   The Government Will Comply with Rule 16(a)(1)(E).

The Government will permit the defendant to inspect and copy or photograph all books, papers, documents, photographs, tangible objects, buildings, or places, or portions thereof, which are within the possession, custody, or control of the Government, and which are material

to the preparation of the defendant's defense or are intended for use by the Government as evidence-in-chief at trial or were obtained from or belong to the defendant, and agrees to preserve such evidence during the pendency of this proceeding.

The defendant is not entitled to all evidence known or believed to exist which is, or may be favorable to the accused, or which pertains to the credibility of the Government's case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> "[T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id., 611 F.2d at 774-775 (citations omitted).

See also United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980) (the Government not required to create exculpatory material that does not exist); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial discovery privileges not contained in the Federal Rules of Criminal Procedure). All physical evidence collected to date will be preserved. The photographs taken at the Port of Entry have been disclosed.

   5.   The Government Will Comply with Rule 16(a)(1)(F)

No scientific testing of the pesticides has been performed. To the extent such evidence is created in the future, the Government will provide the defendant with the results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession of the Government, and will continue to

provide any further such reports that by the exercise of due diligence may become known to the attorney for the Government and are material to the preparation of the defense or are intended for use by the Government as evidence-in-chief at the trial.

6.   The Government Will Comply with Rule 16(a)(1)(G)

No reports of experts have been prepared to date.  The Government will provide any summaries of expert testimony as such evidence is identified as the case proceeds to trial, but no later than two weeks prior to trial.

6.   Jencks Material

Production of witness statements is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies on direct examination.  United States v. Taylor, 802 F.2d 1108, 1118 (9th Cir. 1986); United States v. Mills, 641 F.2d 785, 790 (9th Cir.), cert. denied, 454 U.S. 902 (1981).  Indeed, even material believed to be exculpatory and therefore subject to disclosure under the Brady doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act.  See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).  As a practical matter, the government has disclosed the reports of the investigation, so advance Jencks material has already been provided.

7. Prior Similar Act Evidence

To the extent that the government has evidence currently in its possession that might be argued to be admissible under Rule 404(b)

relating to instances of the illegal imports of pesticides, it has been disclosed, or will be disclosed. Such evidence can be found in the statements of the defendant and may also be found in the information downloaded from the defendant's phone.

8. Henthorn Material

The government will conduct a review of the personnel files of the federal agents involved in the case, and any impeachment material falling within the purview of United States v. Henthorn, 931 F.2d 29 (9th Cir.1991) will be disclosed.

9. Impeachment Information

The defendant may be entitled to various categories of impeachment evidence, including bias or motive to lie, evidence of criminal investigation or convictions, and evidence affecting perception. The government has disclosed much of the evidence currently in its possession that falls into this category, but this disclosure is not yet complete.

The government will disclose such evidence in compliance with its continuing obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) no later than one week before trial, when the witnesses for trial have been identified.

B. PHYSICAL EVIDENCE WILL BE PRESERVED.

The United States has directed the case agents to preserve all physical evidence in the case, including the pesticides, the defendant's personal effects, his cell phone, as well as the agents' notes.

//
//

## IV.
## CONCLUSION

The United States respectfully requests that the court deny the defendant's motion, to the extent it is opposed herein.